Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9107 | **DATE** | 5/3/2002 |
| **CASE TITLE** | Krzalic vs. American Home Mortgage Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court grants the defendants' motion to dismiss Counts 2, 4 and 7 (4-1) and vacates the schedule previously set for the class certification motion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 07 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| OR | courtroom deputy's initials | 02 MAY -6 PM 2:56 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEDZAD KRZALIC and DANIJELA KRZALIC, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 01 C 9107<br>) |
| AMERICAN HOME MORTGAGE CORP. d/b/a FIRST HOME MORTGAGE CORP. and CROSSROADS MORTGAGE, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

DOCKETED MAY 0 7 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Nedzad and Danijela Krzalic obtained a $154,574.00 FHA-insured mortgage loan from First Home Mortgage Corporation; the loan was arranged through a mortgage broker, Crossroads Mortgage, Inc. In connection with the transaction, the Krzalics paid Crossroads an origination fee of $1,522.90 and a commitment fee of $400. Crossroads also received, from FHMC, a "yield spread premium" of $4,637.22. "Yield spread premiums are payments made by a mortgage lender to a mortgage broker as compensation for negotiating a loan with a borrower." *Vargas v. Universal Mortgage Corp.*, No. 01 C 0087, 2001 WL 558045, at *1 (N.D. Ill. May 21, 2001). These are "indirect fees" calculated "based on the interest rate and points of the loan entered into as compared to the par rate offered by the lender to the mortgage broker for that particular loan (e.g., a loan of 8% and no points where the par rate is 7.5% will command a greater premium for the broker than a loan with a par rate of 7.75% and no points)." Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payments to Mortgage

Brokers, 64 Fed. Reg. 10080, 10081 (March 1, 1999).

The Krzalics have now sued FHMC and Crossroads, alleging that Crossroads' receipt of the yield spread premium violated the Federal Housing Authority's 1% limitation on origination fees. Specifically, they allege that the yield spread premium was nothing more than a referral fee, paid and received in violation of the Real Estate Settlement Procedures Act (Count 1); that the payment and receipt of the yield spread premium constituted a deceptive business practice in violation of the Illinois Consumer Fraud Act (Count 3); that by collecting the yield spread premium, Crossroads breached its fiduciary duty to the Krzalics (Count 5); and that by paying the yield spread premium FHMC induced Crossroads to breach its fiduciary duty to the Krzalics (Count 6). Additionally, plaintiffs have alleged class claims for violation of the RESPA (Count 2), violation of the Illinois Consumer Fraud Act (Count 4) and breach of contract (Count 7). The defendants have moved to dismiss the class claims, Counts 2, 4 and 7, for failure to state a claim. Dismissal at this stage of litigation is appropriate only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Despite this stringent standard, the Court concludes that dismissal is appropriate.

The claims defendants seek to dismiss are all predicated on the argument that if a lender charges an origination fee, and also charges a yield spread premium that, when combined with the origination fee, exceeds 1% of the loan amount, the lender violates the Federal Housing Authority directive capping origination fees at 1% of the loan amount. Several courts have considered this issue and all have rejected the argument that the yield spread premium is included in the 1% cap. In *Vargas v. Universal Mortgage Corp.*, No. 01 C 0087, 2001 WL 1545874, at *3

(N.D. Ill. Nov. 29, 2001), the court rejected the argument because it is contrary to the plain language of the Federal Housing Authority's directive concerning the "customary and reasonable fees that may be collected from the borrower," FHA's Mortgagee's Handbook, Chapter 5, §5-3, and contrary to the plain language of the Secretary of Housing and Urban Development's regulation concerning charges that may be collected from the mortgagor, 24 C.F.R. §203.27. The court also noted that payment of yield spread premiums is "widespread in the industry" and concluded that if the FHA meant to include them in the 1% origination fee cap "it would have said so." *Id.* Similarly, in *Watson v. CBSK Financial Group, Inc.*, No. 01 C 4043, 2002 WL 598521, at *5 (N.D. Ill. Apr. 18, 2002), and *Bjustrom v. Trust One Mortgage*, 178 F. Supp. 2d 1183, 1191-92 (W.D. Wash. 2001), the courts rejected the argument because including the yield spread premium in the 1% origination fee cap was directly contrary to the plain language of §203.27, which limits only charges that may be collected from the *borrower*. To date, it does not appear that any court has held that the yield spread premium is included in the 1% cap under the FHA's directive or HUD's regulations.

Plaintiffs argue that these cases were wrongly decided. We disagree. The regulation imposing the 1% cap on origination fees is limited by its plain language to fees to be paid by and collected from the borrower, and the Secretary has made clear that yield spread premiums do not fit in that box; rather, they are "indirect fees" paid by the lender to the mortgage broker. RESPA Statement of Policy 1999-1, 64 Fed. Reg. 10080, 10081. Neither the regulations, which limit fees paid by the borrower, nor the Secretary's statements of policy provide a basis to conclude that the cap includes any yield spread premium that may be paid from the lender to the broker. The Secretary's view of yield spread premiums is spelled out in RESPA Statement of Policy

3

2001-1: Clarification of Statement of Policy 199-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 1240492 (Oct. 18, 2001), which makes clear, among other things, that the Secretary views origination fees and yield spread premiums as being two different things:

> One of the primary barriers to homeownership . . . is the up front cash needed to obtain a mortgage. The closing costs and origination fees associated with a mortgage loan are a significant component of these up front cash requirements. Borrowers may choose to pay these fees out of pocket, or to pay the origination fees, and possibly all the closing fees, by financing them; i.e., adding the amount of such fees to the principal balance of their mortgage loan. The latter approach, however, is not available to those whose loan-to-value ratio has already reached the maximum permitted by the lender. For those without the available cash, who are at the maximum loan-to-value ratio, or who simply choose to do so, there is a third option. This third option is a yield spread premium. Yield spread premiums permit homebuyers to pay some or all of the up front settlement costs over the life of the mortgage through a higher interest rate. Because the mortgage carries a higher interest rate, the lender is able to sell it to an investor at a higher price. In turn, the lender pays the broker an amount reflective of this price difference. The payment allows the broker to recoup the up front costs incurred on the borrower's behalf in originating the loan. Payments from lenders to brokers based on the rates of borrowers' loans are characterized as "indirect" fees . . . .

Having concluded that yield spread premiums can be an effective tool for furthering the goal of homeownership, but still recognizing that "less scrupulous brokers and lenders" may take advantage of the complexity of the settlement transaction and use yield spread premiums as a way to enhance profitability . . . without offering the borrower lower up front fees," *id.*, the Secretary has formulated a test for determining the legality of the yield spread premium paid in any particular case. Under that test, yield spread premiums are not *per se* illegal or *per se* legal; rather, the test requires us to ask first "whether goods or facilities were actually furnished or services were actually performed for the compensation paid," and then whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services

4

that were actually performed." *Id.* Nowhere in the test or in the statements explaining it does the Secretary mention the 1% cap. And the cap certainly would have provided an easier test for the Secretary to explain and the courts to apply. In short, we agree with the other district courts that have addressed the point that if HUD and the FHA had wanted to impose a 1% cap on yield spread premiums, or had wanted to include the yield spread premium in the 1% cap imposed on origination fees, the Secretary would have made that clear in the statements of policy and the regulations. Such a desire is nowhere apparent in any of the materials the Court has found on the subject. Thus, plaintiffs' argument notwithstanding, the Court has no basis to conclude that the cases cited above were wrongly decided; on the contrary, the rule of law set out in the cases cited is consistent with the plain language of the regulations, *see* 24 C.F.R. §203.27, and with the policy statements issued by the Secretary of Housing, *see* RESPA Statement of Policy 2001-1, 66 Fed. Reg. 53052; RESPA Statement of Policy 1999-1, 64 Fed. Reg. 10080.

For the reasons explained above, the Court grants the defendants' motion to dismiss Counts 2, 4 and 7 [Docket # 4-1] and vacates the schedule previously set for the class certification motion.

Dated: May 3, 2002

/s/ Matthew F. Kennelly<br>
MATTHEW F. KENNELLY<br>
United States District Judge